## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## DELTA DIVISION

JODY GOLDSBERRY                                              PETITIONER
Reg #41676-044

V.                              No. 2:21-CV-10-BSM-JTR

JOHN P. YATES, Warden,
FCI Forrest City Low                                         RESPONDENT

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States
District Judge Brian S. Miller. You may file written objections to all or part of this
Recommendation. If you do so, those objections must: (1) specifically explain the
factual and/or legal basis for your objection; and (2) be received by the Clerk of this
Court within fourteen (14) days of the date of this Recommendation. If you do not
file objections, Judge Miller may adopt this Recommendation without independently
reviewing all of the evidence in the record. By not objecting, you may waive the
right to appeal questions of fact.

### I.  Background

Petitioner Jody Goldsberry ("Goldsberry"), an inmate in the Federal
Correction Institute in Forrest City, Arkansas, brings this Petition for Writ of Habeas
Corpus under 28 U.S.C. § 2241 challenging: (1) the federal sentencing court's
application of enhancements under the Federal Sentencing Guidelines; (2) the

Bureau of Prison's calculation of his time served toward his ten-year federal sentence, which was imposed concurrently to an earlier five-year state sentence; and (3) the legality of his sentence following the United States Supreme Court's decision in *Borden v. United States*, 141 S.Ct. 1817 (2021). *Doc. 1; Doc. 17.*

Before addressing Goldsberry's claims, the Court will review the procedural history of Goldsberry's underlying criminal convictions in state and federal court.

## A.    Goldsberry's State Arrest and Court Proceedings

On January 29, 2013, police officers responded to a 911 call at the home of Goldsberry's mother. *United States v. Goldsberry*, 888 F.3d 941, 942 (8th Cir. 2018). When they arrived, they discovered that Goldsberry's mother had been shot in the arm by someone using a .45 caliber pistol.[1] *Id.* A search of the residence yielded six guns, none of which were a .45 caliber pistol, and several boxes of ammunition. *Id.* Goldsberry, a convicted felon, was not at his mother's home when police officers arrived, but his fingerprints were found to be on one of the guns in the residence. *Id.*

On June 20, 2013, police officers received an anonymous tip that Goldsberry was on his mother's property mowing the grass.[2] *Sealed* Presentence Investigation

---

[1] During the investigation of the shooting, officers located a single spent .45 caliber shell casing on the floor inside Ms. Goldsberry's residence. This led officers to believe Ms. Goldsberry was shot with a .45 caliber pistol. *Goldsberry*, 888 F.3d at 942.

[2] At the time, Goldsberry was on the Jefferson County, Missouri Sheriff's Department's "top ten most wanted" list.

Report, *United States v. Goldsberry,* No. 4:14-CR-91-AGF (E.D. Mo. Sept. 14, 2016), ECF No. 152; Respondent's *Sealed* Attachment 1 at 2.  Responding officers found Goldsberry operating a tractor while intoxicated. *Id.* Goldsberry was arrested on state charges of driving while intoxicated ("DWI") and unlawful possession of a firearm. *Id.* The State elected only to pursue the DWI charge. On March 12, 2014, Goldsberry pleaded guilty to the DWI and was sentenced as a chronic offender to five years' imprisonment in the Missouri Department of Corrections ("MDOC"). *State v. Jody L. Goldsberry*, No. 11JE-CR03850-01 (Jefferson Co., Missouri).[3]

### B.    Goldsberry's Federal Indictment, Plea, and Sentencing

On March 27, 2014, Goldsberry was charged in a federal indictment with one count of being a felon in possession of a firearm and ammunition "in or about January 2013." Redacted Indictment, *United States v. Goldsberry,* No. 4:14-CR-91-AGF (E.D. Mo. Mar. 27, 2014), ECF No. 2. On April 15, 2014, the United States District Court for the Eastern District of Missouri issued a writ of habeas corpus *ad prosequendum* pursuant to which United States Marshals "borrowed" Goldsberry from state custody so he could be prosecuted on the federal charge. *Doc. 6-1 at 15–16.*

---

[3] Missouri State court records are publicly available on the Missouri Judiciary's "Case.net" website: https://www.courts.mo.gov/cnet/welcome.do (last visited Apr. 25, 2022).

On April 22, 2014, Goldsberry was arraigned in the United States District Court for the Eastern District of Missouri. He waived his right to a bond hearing and consented to detention on the federal charge. Waiver of Detention Hearing, *United States v. Goldsberry,* No. 4:14-CR-91-AGF (E.D. Mo. Apr. 22, 2014), ECF No. 11. Thus, from on or about April 15, 2014, through his plea and sentencing, Goldsberry remained in United States Marshal custody.

On January 28, 2016, Goldsberry pleaded guilty to being a felon in possession of a firearm and ammunition. On November 22, 2016, United States District Court Judge Audrey G. Fleissig sentenced Goldsberry to 120 months' imprisonment in the Bureau of Prisons ("BOP").

### C.    Goldsberry's Direct Appeal Of His Federal Sentence

On November 28, 2016, Goldsberry filed a notice of appeal of his sentence. On June 17, 2017, while his direct appeal was still pending before the Eighth Circuit, Goldsberry was transferred from United States Marshal custody back to state custody with the MDOC.

In his appeal to the Court of Appeals for the Eighth Circuit, Goldsberry argued that Judge Fleissig committed two errors: (1) she applied a 2-level enhancement "for an offense involving between three and seven handguns" despite the fact his fingerprints were found on only *one* gun; and (2) she found his 2009 conviction for

4

assaulting a law enforcement officer qualified as a "crime of violence" that could be used to increase his base offense level. *Id.* at 943–44.

On April 26, 2018, the Eighth Circuit entered its decision affirming Goldsberry's 120-month sentence. In doing so, the Court began by explaining how Judge Fleissig had properly calculated the guideline range for Goldsberry's sentence:

> At sentencing, the court found that Goldsberry's second-degree Missouri burglary conviction was not a qualifying predicate offense under 18 U.S.C. § 924(e) or U.S.S.G. § 4B1.4(b)(3)(B). The court increased Goldsberry's offense level to 24 under U.S.S.G. § 2K2.1(a)(2) due to Goldsberry's two second-degree Missouri convictions for assault on a law enforcement officer.
>
> Based on these findings, the court determined that Goldsberry's base offense level was 24 under U.S.S.G. § 2K2.1(a)(2), which was adjusted to level 26 after adding the 2–level enhancement under U.S.S.G. § 2K2.1(b)(1)(A) for an offense involving between three and seven firearms. A person in criminal history category VI with an offense level of 26 faced an advisory sentencing guideline range of 120 to 150 months. The statutory maximum sentence was 120 months. The court sentenced Goldsberry to a term of 120 months' imprisonment.

*United States v. Goldsberry*, 888 F.3d 941, 943 (8th Cir. 2018).

The Court then rejected Goldsberry's first argument because, while Goldsberry's fingerprints were found on only one of the six guns recovered inside Ms. Goldsberry's residence, Goldsberry resided in his mother's home and had constructive possession over all six guns. Accordingly, it held that Judge Fleissig did not clearly err by applying the 2-level Guidelines enhancement for offenses

5

involving the possession of three to seven firearms. *Id.* Finally, even if the 2009 conviction did not qualify as a "crime of violence," the Court concluded that any error by Judge Fleissig was harmless.

### D.    Goldsberry's § 2255 Motion

On April 18, 2019, Goldsberry filed a § 2255 Motion to Vacate, Set Aside, or Correct Sentence, in which he argued, in part, that: (1) his counsel provided ineffective assistance by failing to object to him being sentencing as an "armed career criminal;" and (2) his 2009 conviction for assaulting a law enforcement officer did not qualify as a "crime of violence" and could not be used to increase his base offense level under the Federal Sentencing Guidelines. *Goldsberry v. United States*, No. 4:19-CV-950-AGF, 2020 WL 2085647, at *1 (E.D. Mo. Apr. 30, 2020).

In rejecting both of those claims, Judge Fleissig noted that: (1) Goldsberry had *not* been sentenced as an armed career criminal; and (2) his claim that his 2009 conviction did not qualify as a "crime of violence," had been raised and rejected by the Eighth Circuit in Goldsberry's direct appeal, which barred him from attempting to re-litigate that argument in a § 2255 Motion. *Id.* at *10, *15.

### E.    Goldsberry's Pending § 2241 Petition

On January 29, 2021, Goldsberry initiated this action. His Petition for Writ of Habeas Corpus (*Doc. 1*) raised two claims:

6

Claim One:   The federal sentencing court erred by finding his 2009 conviction for assaulting a law enforcement officer qualified as a "crime of violence."

Claim Two:   The Bureau of Prisons ("BOP") miscalculated his sentence and is making him serve "over 11 years on a 10 year sentence." *Doc. 1 at 6*.

On March 17, 2021, Respondent Yates filed a Response (*Doc. 11*) arguing that Goldsberry's Petition should be denied because this Court lacks jurisdiction to consider and decide Claim One; and, Claim Two fails, on the merits, because the BOP properly calculated his sentence and Goldsberry has not demonstrated that he is entitled to any additional sentencing credits.

On April 26, 2022, I entered an Order granting Goldsberry's "Motion to Supplement" and allowed him to bring an additional claim:

Claim Three:   Goldsberry's sentence is illegal based on the Court's holding in *Borden v. United States*, 141 S.Ct. 1817 (2021), that "[o]ffenses with a *mens rea* of reckless do not qualify as violent felonies under [the Armed Career Criminal Act.]"

*Doc. 16; Doc. 17*. Although Respondent Yates has not yet filed a Response to Claim Three, I find, *sua sponte*, that the Court lacks subject matter jurisdiction over that claim, and, for the reasons explained below, it should be dismissed.[4]

---

[4] "Lack of subject matter jurisdiction…may be raised at any time by a party to an action, or by the court *sua sponte*." *Bueford v. Resol. Tr. Corp.*, 991 F.2d 481, 485 (8th Cir. 1993) (citing Fed. R. Civ. P. 12(h)(3)); Rule 12, Rules Governing § 2254 Cases in the United States District Courts (applying Federal Rules of Civil Procedure to habeas proceedings); *see also Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011) ("It is well established that a court has a special obligation to consider whether it has subject matter jurisdiction in every case.").

## II. Discussion

### A.     This Court Lacks Jurisdiction Over Claims One and Three

Goldsberry's first and third claims attack the validity of the ten-year sentence imposed by the sentencing court. In Claim One, he argues that the trial court erred by finding his 2009 conviction for assaulting a law enforcement officer was a "crime of violence" under the Sentencing Guidelines. In Claim Three, he relies on the Court's recent decision in *Borden* to argue that *neither* of his previous convictions for assaulting a law enforcement officer qualify as "crimes of violence," as that phrase is used in the Sentencing Guidelines.[5]  Both of these claims clearly challenge *the imposition* of Goldsberry's sentence.

Generally, a prisoner challenging the imposition of his federal conviction or sentence must proceed by filing a § 2255 Motion with the trial court. *Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010); *Abdullah v. Hedrick*, 392 F.3d 957, 959 (8th Cir. 2004).  However, if a prisoner can establish that the remedy under § 2255 is "inadequate or ineffective to test the legality of his detention," § 2255(e) creates a *narrow exception* which authorizes a federal court in the district of the prisoner's incarceration ("the district of incarceration") to exercise jurisdiction over

---

[5] The *Borden* decision addresses the definition of "violent crimes" under the Armed Career Criminal Act. Although Goldsberry was not sentenced under the Armed Career Criminal Act, the Eighth Circuit has recognized that the *Borden* decision also applies to the definition of "crimes of violence" as that phrase is used in the Sentencing Guidelines. *United States v. Lopez-Castillo*, 24 F.4th 1216, 1219 n.2 (8th Cir. 2022) (discussing *Borden*, 141 S. Ct. at 1834).

such a claim in a § 2241 action. *Hill v. Morrison*, 349 F.3d 1089, 1091 (8th Cir. 2003).

The petitioner bears the burden of demonstrating that the § 2241 challenge he is making to the imposition of his sentence satisfies the narrow "saving clause" exception contained in § 2255(e).[6] *Lopez-Lopez*, 590 F.3d at 907; *Hill*, 349 F.3d at 1091. If the § 2241 habeas petitioner fails to establish that the remedy under § 2255 is inadequate or ineffective, the district of incarceration lacks jurisdiction to consider the claim. *Lee v. Sanders*, 943 F.3d 1145, 1147 (8th Cir. 2019).

Here, Claim One was raised and rejected by the Eighth Circuit on direct appeal, and then raised and rejected again by Judge Fleissig in denying Goldsberry's § 2255 Motion. Accordingly, Goldsberry is barred from raising this argument, *for a third time*, in this § 2241 action. *Hill*, 349 F.3d at 1092 ("A prisoner cannot raise, in a § 2241 motion filed in the district of incarceration, an issue which could or was actually raised in the § 2255 motion filed in the sentencing district.").

Similarly, because Claim Three claim *could have* been brought by Goldsberry in his § 2255 Motion, this Court also lacks jurisdiction over that claim. Goldsberry filed his § 2255 Motion on April 18, 2019—more than two years before the Court decided *Borden* on June 10, 2021. Nevertheless, Goldsberry clearly *could have*

---

[6] *See Jones v. Hendrix*, 8 F.4th 683, 686 (8th Cir. 2021) (adopting the usage of "saving" clause over "savings" clause).

raised a *Borden*-like argument in his § 2255 Motion but he failed to do so. Thus, he cannot show that § 2255 is "inadequate or ineffective to *test* the legality of [his] detention." *Jones v. Hendrix*, 8 F.4th 683, 687 (8th Cir. 2021), *petition for cert. filed*, No. 21-857 (U.S. Dec. 7, 2021);[7] *Crayton v. United States*, 27 F.4th 652, 655 (8th Cir. 2022) (discussing *Jones*, 8 F.4th 683) ("Focusing on the plain meaning of § 2255(e)'s 'to test' and 'remedy' language, we held that a change in caselaw does not make § 2255's remedy inadequate or ineffective.").

Accordingly, because Goldsberry has failed to demonstrate that he is entitled to the benefit of the saving clause in § 2255, this Court lacks subject matter jurisdiction over Claims One and Three.[8] *See Lee v. Sanders*, 943 F.3d at 1147 (court

---

[7] In *Jones v. Hendrix*, the Petitioner argued he was entitled to bring a § 2241 Petition through the saving clause because: (1) there was a change in Supreme Court case law that affected his case; and (2) he was barred from filing a "second or successive" § 2255 Motion. *Jones*, 8 F.4th 683. A petition for writ of *certiorari* has been filed in that case. According to the docket on the Supreme Court's website, the matter has been full briefed and is distributed for Conference of April 29, 2022 https://www.supremecourt.gov/docket/docketfiles/html/public/21-857.html (last visited Apr. 28, 2022).

Regardless of whether the Supreme Court takes up the issue of the applicability of the saving clause in that situation, the instant case is distinguishable from *Jones* because Goldsberry has put forth no evidence that he has attempted to file, been barred from filing, or would be unable to pursue relief through, a "second or successive" § 2255 Motion. Again, it is the *petitioner's* burden to prove entitlement to the § 2255(e) saving clause. *Lopez-Lopez*, 590 F.3d at 907.

[8] Because the Court lacks subject-matter jurisdiction, it cannot reach Respondent's alternative argument that Claim One fails on the merits. *See Flittie v. Solem*, 882 F.2d 325, 326 (8th Cir. 1989) (Beam J., concurring) ("A want of subject matter jurisdiction prohibits a court from considering any substantive aspects of a case or controversy."); *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").

10

lacks "jurisdiction to entertain a § 2241 petition unless and until" the petitioner demonstrates that he is entitled to the benefit of § 2255(e)'s saving clause).

**B.    The BOP Did Not Err In Calculating Goldsberry's Sentence**

In Claim Two, Goldsberry directly challenges the *execution* of his sentence, a claim that this Court, sitting in the district of incarceration, clearly has jurisdiction to decide in a § 2241 habeas action. *Deroo v. United States*, 709 F.3d 1242, 1245 (8th Cir. 2013); *Matheny v. Morrison*, 307 F.3d 709, 711 (8th Cir. 2002) ("A petitioner may attack the execution of his sentence through § 2241 in the district where he is incarcerated; a challenge to the validity of the sentence itself must be brought under § 2255 in the district of the sentencing court.").

According to Goldsberry, the BOP miscalculated the time he is entitled to have credited toward his ten-year federal sentence. As a result of this calculation error, Goldsberry argues he will be required to serve "over 11 years on a ten year sentence." *Doc. 1 at 6*. Specifically, Goldsberry alleges that, because he has been in custody since June 20, 2013, his projected release date of September 7, 2024 must be incorrect. *Id.*

Goldsberry's relevant custodial history is as follows:

1.    On June 20, 2013, he was arrested by Jefferson County police officers for driving a tractor while intoxicated and unlawfully possessing a firearm. The state did not pursue the firearm charge, but he remained in state pretrial custody on the DWI charge for 265 days, until March 12, 2014, when he was sentenced to five years' imprisonment in MDOC.

11

2.      On March 12, 2014 Goldsberry entered state custody in the
        MDOC, where he remained until on or about April 16, 2014,
        when the United States "borrowed" him from primary state
        custody via a writ of habeas corpus *ad prosequendum*, so that he
        could be prosecuted on the federal charge of being a felon in
        possession of a firearm and ammunition.

3.      On January 28, 2016, Goldsberry pleaded guilty to the federal
        charge.

4.      On November 22, 2016, United States District Judge Audrey G.
        Fleissig sentenced Goldsberry to ten years' imprisonment, to run
        concurrent to the five-year state sentence he was serving.
        Goldsberry remained a "borrowed" state prisoner, temporarily in
        federal custody, until June 30, 2017, at which time he was
        transferred back to MDOC.

5.      On June 17, 2018, Goldsberry completed serving his five-year
        sentence for driving while intoxicated. Although he should have
        entered primary federal custody on that date, pursuant to the
        outstanding federal detainer, the MDOC mistakenly released him
        to state custody for probation violations. *Doc. 6-1 at 3*;
        Respondent's *Sealed* Attachment 5. Thus, Goldsberry did not
        enter primary federal custody until July 6, 2018. *Doc. 6-1 at 26*.

The BOP is authorized to compute the projected release dates for federal
prisoners based on their federal sentence. *United States v. Tindall*, 455 F.3d 885, 888
(8th Cir. 2006) (citing *United States v. Wilson*, 503 U.S. 329, 334–35 (1992)). The
calculation of a federal term of imprisonment is governed by 18 U.S.C. § 3585(a)
and (b). Together, these two statutory subparts direct the BOP to determine: (1) when
a federal sentence "commences;" and (2) whether a defendant is entitled to credit for

12

time "spent in official detention prior to the date the sentence commences." 18 U.S.C § 3585(a), (b).

**1.    Goldsberry's 10-Year Federal Sentence Commenced on November 22, 2016.**

The BOP's Sentence Computation Manual provides that the earliest date a federal sentence may commence is the date on which it was imposed. BOP Program Statement 5880.28, p. 1-13 ("In no case can a federal sentence of imprisonment commence earlier than the date on which it was imposed.") (*Doc. 6-1 at 29*); *see also*, *e.g.*, *Coloma v. Holder*, 445 F.3d 1282, 1283-84 (11th Cir. 2006) (per curiam) (district court's order that prison term should run concurrently with prison term already being served did not mean the two sentences had the same starting date; federal sentence cannot commence prior to date it is pronounced, even if made concurrent with sentence already being served); *United States v. LaBeille–Soto*, 163 F.3d 93, 98 (2nd Cir.1998) ( "We see nothing in [§ 3585(a) ] to indicate that the court is permitted to order that the sentence be deemed to have commenced on an earlier date [than the date of imposition].") *Demartino v. Thompson*, 116 F.3d 1489 (10th Cir. 1997) (unpublished opinion) (quoting *United States v. Flores*, 616 F.2d 840, 841 (5th Cir.1980)) ("Logically, [a federal sentence] cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served."); *Connor v. Hendrix*, No. 2:19-CV-20-KGB-JTR, 2019 WL 7882522, at *3

(E.D. Ark. Aug. 2, 2019), *report and recommendation adopted*, 2020 WL 634038 (E.D. Ark. Feb. 10, 2020).

Furthermore, a federal sentence generally does not commence until the defendant is received into federal custody—which, for Goldsberry was on July 6, 2018. 18 U.S.C. § 3585(a). However, because Judge Fleissig ordered that Goldsberry's 10-year federal sentence run concurrent with the 5-year state sentence he was already serving, his federal sentence commenced on the earliest possible date, *November 22, 2016*—the date the sentence was imposed.

Thus, unless Goldsberry's is entitled to credit for time "spent in official detention prior to the date the sentence commences," he would be required to served ten years from the date of his federal sentencing, or until November 22, 2026.

## 2.    The BOP Has Credited Goldsberry All Of The Pre-Trial Credit He Is Entitled To Receive.

In calculating Goldsberry's projected release date to be September 7, 2024, the BOP gave Goldsberry two types of sentencing credits: (1) a projected 540 days of "good conduct time;"[9] and (2) 265 days of *Willis* credit from the date he was

---

[9] *See* 18 U.S.C. § 3624(b)(1):

[A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, of up to 54 days for each year of the prisoner's sentence imposed by the court, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

arrested on June 20, 2013 to March 12, 2014, the date he was sentenced on the state DWI charge.[10]

Goldsberry claims he is entitled to additional credit for the "3 years" he was "in the custody of the Federal Marshals in St. Louis, MO." *Doc. 1 at 5*. From April 16, 2014 to June 30, 2017, Goldsberry was in federal custody as a "borrowed" state prisoner, pursuant to a writ of habeas corpus *ad prosequendum*. Goldsberry spent the bulk of these 1171 days (approximately 3 years and 2 ½ months) incarcerated at the St. Louis County Justice Center. *See* Respondent's *Sealed* Attachment 5 at 2.

Considering Goldsberry's federal sentence began on November 22, 2016, a portion of this time has already been calculated and credited toward his sentence. He is *not* entitled to credit for the remaining time—April 16, 2014 to November 21, 2016.

During this time, Goldsberry: (1) had pleaded guilty to his state DUI charge and been sentenced to five years' imprisonment in MDOC; but (2) had not yet been sentenced in his federal case. As a "borrowed" state prisoner, Goldsberry remained in primary *state* custody, serving time toward his *state* sentence. *Munz v. Michael*, 28 F.3d 795, 798 (8th Cir. 1994) ("Issuance of a writ of habeas corpus *ad*

---

[10] Under the Fifth Circuit's decision in *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971), an inmate is entitled to receive credit toward his federal sentence for all pre-sentence, non-federal custody that occurs on or after the date of the federal offense until the date that the first sentence, whether state or federal, begins. *See also* BOP Program Statement 5880.28, p. 1-22 (*Doc. 6-1 at 37*) (discussing *Willis* time credits).

15

*prosequendum* does not alter the defendant's custody status. It merely changes the location of his custody for the sentence he was already serving.")

Because Goldsberry received credit on his state sentence, from April 16, 2014 to November 21, 2016 (the time he was a "borrowed" state prisoner awaiting disposition of his federal charges), the BOP is prohibited from crediting that time toward his federal sentence under "the express bar on double credit found in 18 U.S.C. § 3585(b)." *Elwell v. Fisher*, 716 F.3d 477, 484 (8th Cir. 2013) (citing 18 U.S.C. § 3585(b)) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences…*that has not been credited against another sentence*) (emphasis added).

The Court concludes that the BOP properly calculated Goldsberry's 10-year federal sentence and that Goldsberry has not proven he is entitled to any additional credits on his sentence. Accordingly, Claim Two should be dismissed, on the merits.

### III.    Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.      Petitioner Jody Goldsberry's Petition and Amended Petition for Writ of Habeas Corpus (*Doc. 1; Doc. 17*) be DISMISSED.

2.      Claims One and Three be dismissed, without prejudice, for lack of jurisdiction.

16

3.      Claim Two regarding the calculation of pre-sentence jail time credit be

dismissed, with prejudice.

DATED this 28th day of April, 2022.

_____
UNITED STATES MAGISTRATE JUDGE